**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| IN RE XPO LOGISTICS, INC. DERIVATIVE LITIGATION | Civil Action No. 1:19-cv-00889-RGA<br><br>Consolidated |

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE A FIRST AMENDED
CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT AND
TO STAY BRIEFING ON DEFENDANTS' MOTIONS TO DISMISS**

Dated: April 13, 2020

PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP

Daniel A. Mason (#5206)
500 Delaware Avenue, Suite 200
Post Office Box 32
Wilmington, DE 19899-0032
(302) 655-4410

Martin Flumenbaum (admitted *pro hac vice*)
Julia T. M. Wood (admitted *pro hac vice*)
Ameya S. Ananth (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Defendants Bradley S. Jacobs,
Gena L. Ashe, Michael G. Jesselson,
Adrian P. Kingshott, Jason D. Papastavrou
and Oren G. Shaffer, and Nominal Defendant
XPO Logistics, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

SUMMARY OF ARGUMENT .................................................................................. 1

STATEMENT OF RELEVANT FACTS .................................................................... 4

I.     The Commencement of This Action: The *Jez* and *Candler* Complaints ............................ 4

II.    Plaintiffs Abandon Their Initial Theories and Pivot to Amazon-Related Allegations: The September 2019 Consolidated Complaint and the *Rose* Complaint .................................................................................................................. 5

III.   Plaintiffs Again Reverse Course and Designate the Initial *Jez* Complaint as Their Operative Pleading, Rather than Filing a New Amended Complaint or Designating Either of Their Amazon-Related Complaints ................................................. 6

IV.   Plaintiffs Seek to Again Reverse Course, Claiming to Have "Inadvertently" Designated the *Jez* Complaint as a "Mistake" ...................................................... 6

ARGUMENT ........................................................................................................... 7

I.     Plaintiffs' Motion to Amend Should Be Denied .................................................... 7

     A.    Plaintiffs' "Mistake" Claim Is Not Credible and Should Be Rejected ................... 9

     B.    Even If Plaintiffs' "Mistake" Claim Is Credited, Plaintiffs Still Fail to Demonstrate Good Cause for Amendment ............................................... 11

     C.    Plaintiffs' Motion to Amend Should Be Denied as Unduly Delayed ................... 13

     D.    Plaintiffs' Motion to Amend Should Be Denied as Unduly Prejudicial ............... 14

     E.    Plaintiffs' Motion to Amend Should Be Denied as Futile .................................... 15

II.    Given the Frivolity of Plaintiffs' Motion for Leave to Amend, a Stay of the Current Briefing Schedule Is Unwarranted and Would Needlessly Delay These Proceedings ............................................................................................................. 17

III.   Alternatively, If the Motion to Amend Is Granted, the Court Should Condition Any Amendment on Plaintiffs Reimbursing Defendants' for All Attorneys' Fees, Expenses and Costs Incurred in Connection with Defendants' Motions to Dismiss ......... 18

CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ABS Indus., Inc.* v. *Fifth Third Bank*,
  2008 WL 2185378 (N.D. Ohio May 23, 2008)....................................................12

*In re Adams Golf, Inc. Sec. Litig.*,
  381 F.3d 267 (3d Cir. 2004)..........................................................................14

*Arunachalam* v. *Int'l Bus. Machines Corp.*,
  243 F. Supp. 3d 526 (D. Del. 2017)................................................................8

*Bjorgung* v. *Whitetail Resort*, *LP*,
  550 F.3d 263 (3d Cir. 2008)....................................................................12, 14

*Brookman* v. *Township of Hillside*,
  2018 WL 4350278 (D.N.J. Sept. 12, 2018) ..................................................15

*Centifanti* v. *Nix*,
  865 F.2d 1422 (3d Cir. 1989)........................................................................8

*Chambers* v. *NASCO, Inc.*,
  501 U.S. 32 (1991)......................................................................................21

*City of Cambridge Ret. Sys.* v. *Altisource Asset Mgmt. Corp.*,
  908 F.3d 872 (3d Cir. 2018)........................................................................18

*Cornell Uni.* v. *Illumina, Inc.*,
  2012 WL 1885129 (D. Del. May 23, 2012)....................................................12

*Cureton* v. *Nat'l Coll. Athletic Ass'n*,
  252 F.3d 267 (3d Cir. 2001)....................................................................15, 16

*Del. Display Grp. LLC* v. *Lenovo Grp. Ltd.*,
  2016 WL 720977 (D. Del. Feb. 23, 2016) ....................................................15

*Ever Win Int'l Corp.* v. *Radioshack Corp.*,
  902 F. Supp. 2d 503 (D. Del. 2012)..............................................................19

*Gen. Signal Corp.* v. *MCI Telecomms. Corp.*,
  66 F.3d 1500 (9th Cir. 1995) ......................................................................20

*GlaxoSmithKline LLC* v. *Glenmark Pharms. Inc.*,
  2016 WL 7319670 (D. Del. Dec. 15, 2016)....................................................8

*Hayden* v. *Feldman*,
  159 F.R.D. 452 (S.D.N.Y. 1995) ..................................................................20

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*ICU Med., Inc.* v. *RyMed Techs., Inc.*,
  674 F. Supp. 2d 574 (D. Del. 2009)........................................................................8

*ING Bank, FSB* v. *Am. Reporting Co., LLC*,
  859 F. Supp. 2d 700 (D. Del. 2012)......................................................................15

*Jersey Dental Labs.* v. *Dentsply Int'l, Inc.*,
  2002 WL 2007916 (D. Del. Aug. 27, 2002) ............................................................8

*Jones* v. *Crisis Intervention Servs.*,
  239 F. Supp. 3d. 795 (D. Del. 2017)......................................................................18

*Kaul* v. *Christie*,
  2019 WL 920815 (D.N.J. Feb. 22, 2019) ..............................................................11

*LaSalle Nat. Bank* v. *First Conn. Holding Grp. LLC.*,
  287 F.3d 279 (3d Cir. 2002)..................................................................................21

*Leased Optical Departments-Montgomery Ward, Inc.* v. *Opti-Center, Inc.*,
  120 F.R.D. 476 (D.N.J. 1988) ...............................................................................20

*Lorenz* v. *CSX Corp.*,
  1 F.3d 1406 (3d Cir. 1993)..............................................................................8, 14

*Estate of Oliva ex rel. McHugh* v. *N.J.*,
  604 F.3d 788 (3d Cir. 2010)...................................................................................8

*Molina Virola* v. *Saul*,
  2019 WL 3495997 (E.D. Pa. Aug. 1, 2019) ..........................................................18

*Mullin* v. *Balicki*,
  875 F.3d 140 (3d Cir. 2017)..................................................................................20

*S. Freedman & Co. Inc.* v. *Raab*,
  2008 WL 4534069 (D.N.J. Oct. 6, 2008)...............................................................19

*WebXchange Inc.* v. *Dell Inc.*,
  2010 WL 256547 (D. Del. Jan. 20, 2010)................................................................9

*Wood* v. *Baum*,
  953 A.2d 136 (Del. 2008) .....................................................................................18

**STATUTES**

28 U.S.C. § 1927...................................................................................................21

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

DGCL § 102(b)(7) ..........................................................................................................18

**OTHER AUTHORITIES**

Charles Alan Wright & Arthur R. Miller,
    FEDERAL PRACTICE AND PROCEDURE § 1486 (3d ed. 2008) ...................................20

Fed. R. Civ. P. 15 ............................................................................................................8

Fed. R. Civ. P. 16 ...................................................................................................8, 9, 12

## NATURE AND STAGE OF THE PROCEEDINGS

Defendants Bradley S. Jacobs, Gena L. Ashe, Michael G. Jesselson, Adrian P. Kingshott, Jason D. Papastavrou, and Oren G. Shaffer (the "Director Defendants") and Nominal Defendant XPO Logistics, Inc. ("XPO" or the "Company") respectfully submit this memorandum of law in opposition to Plaintiffs' Motion for Leave to File a First Amended Consolidated Shareholder Derivative Complaint and to Stay Briefing on Defendants' Motions to Dismiss (D.I. 37, referenced herein as the "Motion to Amend" and "Motion to Stay," and together, the "Motion").

## SUMMARY OF ARGUMENT

Plaintiffs continue in vain to search for a theory of liability against Defendants. Nearly one year after the initial complaint was filed in this action, and after having seen Defendants' motions to dismiss and realizing that their allegations lacked merit, Plaintiffs are now attempting a ***third*** about-face on their basic theory of this case. Plaintiffs claim, incredibly, to have made an "inadvertent mistake" two months ago in designating the wrong complaint as operative— and to have not realized that error until a full week after Defendants filed their motions to dismiss. Plaintiffs nevertheless attempt to frame their Motion to Amend as a run-of-the-mill, ordinary course amendment of a pleading in response to a motion to dismiss, to correct a "harmless error." Nothing could be further from the truth.

This Court's December 12, 2019 consolidation order (D.I. 23) afforded Plaintiffs 45 days to file an amended complaint or designate an existing complaint as operative. On January 27, 2020, the very last day of that span, Plaintiffs—through their eleven attorneys at six different law firms—designated their initial complaint (D.I. 1, the "*Jez* Complaint") as operative. (D.I. 24.)  On March 4, 2020, one week after Defendants moved to dismiss that complaint (D.I. 29–35), Plaintiffs' counsel emailed Defendants' counsel out of the blue as follows:

After reviewing Defendants' motion to dismiss, ***we realized we inadvertently designated the wrong complaint***.  We intend file [sic] an amended complaint Monday [March 9, 2020] which will reflect the proper designation.  Let us know if you would like to discuss and sorry for our mistake.

(Exhibit 1 to the Declaration of Daniel A. Mason (hereinafter, "Ex. __") (emphasis added).)

That same day, Defendants responded that Plaintiffs' claim of error was not credible, and that Plaintiffs should either respond to Defendants' motions to dismiss or immediately dismiss their complaint with prejudice.  Plaintiffs have instead chosen to burden this Court with their Motion, which should be denied in full.

*First*, Plaintiffs' claim of "mistake" is implausible and should be rejected.  Plaintiffs do not attempt to explain their purported "mistake."  Indeed, they do not even identify the pleading they purportedly intended to file or designate.  Plaintiffs' claim of "mistake" cannot be reconciled with their own January 27 notice, which specifically referenced the designated complaint by the Plaintiff that filed it (Adriana Jez), the date on which it was filed (May 13, 2019), and its docket number (D.I. 1).  (D.I. 24.)  Plaintiffs clearly did not intend to file an amended complaint on that date.  There was no filing other than the designation of the *Jez* Complaint.  It is also not credible that Plaintiffs failed to identify the purported "mistake" for the entire 30-day span during which Defendants prepared their motions to dismiss, nor for an additional full week ***after*** Defendants moved to dismiss.  Plaintiffs fare no better in claiming that amendment is required to add "newly discovered information."   To the contrary, Plaintiffs merely seek to lift allegations from an amended complaint in a parallel securities class action, which was filed, and thus readily available to Plaintiffs, more than ***three weeks*** before Plaintiffs purportedly designated the wrong complaint.

*Second*, even if Plaintiffs' claim of "mistake" is credited, leave to amend still should be denied.  Plaintiffs utterly fail to identify any legal authority from this or any other court allowing

amendment in similar circumstances, and for good reason: Plaintiffs cannot come close to showing good cause for amendment given their inexplicable failure to exercise reasonable diligence.

*Third*, Plaintiffs' Motion to Amend should be denied based upon Plaintiffs' inexplicable and inexcusable delay. This Court afforded Plaintiffs more than ample time to amend their complaint or designate an operative complaint. During the 45 days from the entry of the Court's consolidation order on December 12, 2019, until they made their allegedly mistaken designation on January 27, 2020, Plaintiffs had every opportunity to file an amended complaint advancing their new (meritless) theory of the case or including their supposedly "new" factual allegations, all of which were at their disposal when they designated the *Jez* Complaint on January 27. Yet, for reasons Plaintiffs have yet to explain, Plaintiffs—with all of their law firms and attorneys—simply failed to do so. Indeed, Plaintiffs even now refuse to take full responsibility for their supposed error, claiming it was Defendants who should have realized that their filing was a mistake. (*See* Mot. ¶ 4.)

*Fourth,* Plaintiffs' Motion to Amend should be denied based upon the unfair prejudice it would cause Defendants. Defendants have expended significant resources responding to the *Jez* Complaint. Five law firms, on behalf of nine clients, wrote nearly forty pages of briefing based on Plaintiffs' designation. There was nothing on the face of the filing that would have alerted Defendants to the possibility that the designation was anything other than Plaintiffs' knowing, strategic choice of an operative complaint, as the Court's Order required. Defendants should not now be punished for refusing to second-guess Plaintiffs' own deliberate filing, nor should Plaintiffs be afforded a "mulligan" under such costly and extraordinary circumstances.

*Fifth*, Plaintiffs' proposed amended complaint suffers the same threshold deficiencies as the *Jez* Complaint, including an utter failure to establish demand futility. Accordingly, amendment should be denied as futile.

*Finally*, Plaintiffs' Motion to Stay should likewise be denied due to the frivolity of Plaintiffs' Motion to Amend and the balance of prejudice to the parties.  Plaintiffs cannot claim prejudice from being held to the briefing schedule this Court ordered more than four months ago.

Defendants oppose Plaintiffs' Motion in full.  In the alternative, if the Motion to Amend is granted, Defendants respectfully request that the Court condition any such amendment upon Plaintiffs recompensing Defendants for their attorneys' fees, expenses, and costs incurred in preparing and submitting their motions to dismiss the "inadvertently" designated *Jez* Complaint.

## STATEMENT OF RELEVANT FACTS

### I.  The Commencement of This Action: The *Jez* and *Candler* Complaints

This consolidated action commenced on May 13, 2019, when Plaintiff Adriana Jez filed her initial shareholder derivative complaint, which centered on allegations of supposed accounting improprieties at XPO.  (D.I. 1 (as defined above, the "*Jez* Complaint").)  The *Jez* Complaint borrowed lengthy, verbatim passages from a putative class action lawsuit, styled *Labul* v. *XPO Logistics, Inc.*, 18-cv-2062 (D. Conn. Dec. 14, 2018), filed five months before, piggybacking upon *Labul*'s allegations that XPO and certain of its officers committed securities fraud based upon the same alleged accounting irregularities.  Both the *Labul* and *Jez* lawsuits drew their substantive allegations from a since-debunked report by activist short-seller Spruce Point Capital Management, LLC (the "Spruce Report").[1]

---

[1]  The infirmities in the *Jez* Complaint are set forth in Defendants' pending motions to dismiss.  (D.I. 29–35.)

Shortly thereafter, on May 24, 2019, Plaintiff Erin Candler filed her shareholder derivative complaint, with nearly identical allegations to the *Jez* Complaint.  (*See Candler* v. *Jacobs*, No. 19-cv-00959-RGA (D. Del.) (*Candler* D.I. 1) (the "*Candler* Complaint").)

On June 14, 2019, the *Jez and Candler* actions were consolidated.  (D.I. 6.) Plaintiffs were directed to "file an amended consolidated derivative complaint or designate one of the two existing complaints as the operative consolidated complaint."  (D.I. 13.)

## II.    Plaintiffs Abandon Their Initial Theories and Pivot to Amazon-Related Allegations: The September 2019 Consolidated Complaint and the *Rose* Complaint

Also in June 2019, in the parallel *Labul* securities action, the *Labul* plaintiffs abandoned their allegations premised upon the Spruce Report in an amended complaint, instead concocting an entirely new theory of the case based upon a decline in business from XPO's largest customer, Amazon.  (*Labul* D.I. 102.)

Plaintiffs here followed suit.  Plaintiffs' consolidated derivative complaint, filed on September 27, 2019 (D.I. 14, the "September 2019 Consolidated Complaint"), similarly abandoned Plaintiffs' prior theories of alleged accounting irregularities premised on the Spruce Report, and instead fastened onto the revised *Labul* complaint's theory of liability based on the reduction in XPO's business from Amazon.  The same day, another purported XPO shareholder filed a competing derivative complaint, which contained substantially similar Amazon-related allegations to those in the September 2019 Consolidated Complaint.  (*See Rose* v. *Jacobs*, No. 19-cv-01815-RGA (D. Del.) (*Rose* D.I. 1) (the "*Rose* Complaint").)   The *Rose* action was subsequently consolidated into this consolidated action.

On December 12, 2019, this Court entered a Stipulation and Order of Consolidation (D.I. 23), which ordered Plaintiffs to either submit an amended complaint or designate one of the four prior complaints as operative within 45 days—thus, by no later than January 27, 2020.

5

III.    **Plaintiffs Again Reverse Course and Designate the Initial *Jez* Complaint as Their Operative Pleading, Rather Than Filing a New Amended Complaint or Designating Either of Their Amazon-Related Complaints**

In November 2019, the *Labul* plaintiffs' consolidated complaint—focusing upon XPO's relationship with Amazon—was dismissed with leave to file an amended complaint (*Labul* D.I. 132), which the *Labul* plaintiffs filed on January 3, 2020 (*Labul* D.I. 134).

In apparent response to *Labul*'s dismissal, Plaintiffs here reversed course yet again. On January 27, 2020—the last day of the 45-day span afforded by this Court, and three weeks after the *Labul* plaintiffs' amended complaint—Plaintiffs did not file an amended complaint. Rather, Plaintiffs abandoned their Amazon-related theories and designated the initial (previously abandoned) *Jez* Complaint as their operative pleading in this consolidated action. (D.I. 24.)

Plaintiffs' notice of designation was highly specific in this regard, identifying the *Jez* Complaint by specific reference to the Plaintiff that filed it (Adriana Jez), the date on which it was filed (May 13, 2019), and its docket number (D.I. 1). (*Id.*) The notice was submitted by eleven attorneys from six firms representing Plaintiffs in this action. (*Id.*) By designating the *Jez* Complaint, Plaintiffs were clearly not filing a new amended complaint.

On February 26, 2020, in accordance with the schedule set by the Court, Defendants moved to dismiss the operative *Jez* Complaint. (D.I. 29–35.) Defendants argued that, in addition to other defects, Plaintiffs utterly failed to demonstrate that demand was futile against a majority of the members of XPO's Board of Directors, thus warranting dismissal with prejudice.

IV.    **Plaintiffs Seek to Again Reverse Course, Claiming to Have "Inadvertently" Designated the *Jez* Complaint as a "Mistake"**

On March 4, 2020—nearly 40 days after designating the *Jez* Complaint as operative, and a full week after Defendants moved to dismiss it—Plaintiffs' counsel emailed Defendants' counsel out of the blue as follows:

After reviewing Defendants' motion to dismiss, **we realized we inadvertently designated the wrong complaint**. We intend file [sic] an amended complaint Monday [March 9, 2020] which will reflect the proper designation. Let us know if you would like to discuss and sorry for our mistake.

(Ex. 1 (emphasis added).) That same day, Defendants responded that Plaintiffs' claim of error was not credible, and that Plaintiffs should either respond to Defendants' motions to dismiss or immediately dismiss their complaint with prejudice.

Plaintiffs did not file their Motion on March 9 or for weeks thereafter. On March 18—two full weeks after Plaintiffs' initial email claiming the *Jez* Complaint was "inadvertently" designated as a "mistake"—Plaintiffs first communicated their intention to seek a stay of the operative briefing schedule. (Ex. 2.) Defendants promptly responded that they objected to a stay of the briefing schedule for the same reasons as a motion for leave to amend. (*Id.*) Plaintiffs finally filed their Motion on March 27, mere hours before their Court-ordered deadline to respond to Defendants' motions to dismiss, and two full months after Plaintiffs' purported "mistake" in designating the wrong complaint.

## ARGUMENT

## I.      PLAINTIFFS' MOTION TO AMEND SHOULD BE DENIED[2]

Although courts "freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "[a]mendment . . . is not automatic." *Arunachalam* v. *Int'l Bus. Machines Corp.*, 243 F. Supp. 3d 526, 530 (D. Del. 2017) (Andrews, J.). This Court may properly deny leave to amend where the amendment would be prejudicial to the non-movants, including, but not limited to, situations in which the movant has unduly delayed in seeking leave to amend or acted in bad

---

2    Plaintiffs do not contest that leave of Court is required to amend their complaint. (Mot. ¶¶ 8–9.) Indeed, because Plaintiffs have sought leave from this Court through their Motion to Amend, this should be treated as "a case in which leave of court is **required** to amend." *Centifanti* v. *Nix*, 865 F.2d 1422, 1431 (3d Cir. 1989) (emphasis added); *see also Jersey Dental Labs.* v. *Dentsply Int'l, Inc.*, 2002 WL 2007916, at *1 (D. Del. Aug. 27, 2002).

faith in doing so.  *Estate of Oliva ex rel. McHugh* v. *N.J.*, 604 F.3d 788, 803 (3d Cir. 2010); *see also Lorenz* v. *CSX Corp.*, 1 F.3d 1406, 1413–14 (3d Cir. 1993) ("prejudice to the non-moving party is the touchstone for the denial of an amendment") (quoting *Cornell & Co.* v. *Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).

Moreover, under Rule 16(b), "[a]fter a pleading deadline has passed, the Third Circuit requires a showing of good cause in order to amend."  *ICU Med., Inc.* v. *RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009) (citing *E. Minerals & Chems. Co.* v. *Mahan*, 225 F.3d 330, 340 (3d Cir. 2000)).  A party seeking to amend can demonstrate good cause by showing that the party could not have reasonably met the Court's schedule despite its diligence.  *See GlaxoSmithKline LLC* v. *Glenmark Pharms. Inc.*, 2016 WL 7319670, at *1 (D. Del. Dec. 15, 2016) ("[W]hether Rule 16(b)'s good cause requirement is met depends on the diligence of the party seeking modification."); *see also WebXchange Inc.* v. *Dell Inc.*, 2010 WL 256547, at *2 (D. Del. Jan. 20, 2010).

Here, Plaintiffs do not seek, either in good faith or for good cause, to amend their operative pleading in response to Defendants' motions to dismiss.  Rather, having realized a full week after Defendants filed their motions to dismiss that the *Jez* Complaint cannot withstand dismissal, Plaintiffs are attempting a complete do-over under the guise of correcting their purported "mistake" in "inadvertently" designating the wrong complaint.

Moreover, if Plaintiffs' claim of "mistake" is credited (although it should not be), the Motion to Amend still should be denied.  Plaintiffs fail to identify any case in which this Court, or any other court, has granted leave to amend in similar circumstances.  Defendants are aware of no such case, either.  The prejudice to Defendants from Plaintiffs' shell game, and ***third*** complete

abandonment and reversal of their theory of the case since Plaintiffs commenced this action, is self-evident.  Plaintiffs' Motion to Amend should be denied in full.

> **A.     Plaintiffs' "Mistake" Claim Is Not Credible and Should Be Rejected**

The underpinning of Plaintiffs' Motion to Amend is their extraordinary claim that they "inadvertently" designated the wrong complaint as a "mistake," which they characterize as a "harmless error."  That contention is not credible and should be squarely rejected.

This Court afforded Plaintiffs 45 days to file an amended complaint or designate an existing complaint as operative.  On the very last day of this span, Plaintiffs filed their notice of designation specifically identifying the *Jez* Complaint as their operative pleading.  Plaintiffs' contention—that all eleven attorneys and all six firms who signed the designation notice were asleep at the switch in designating the wrong complaint, rather than filing a new amended complaint, and that none of them recognized this "mistake" until a full week after receiving Defendants' motions to dismiss—is incredible.

Plaintiffs make no effort to explain how this purported "mistake" could have possibly occurred.  Nor do Plaintiffs even identify what pleading they purportedly intended to file or designate as operative back on January 27.  Instead, Plaintiffs irresponsibly blame Defendants for Plaintiffs' own conceded error, claiming that Defendants somehow "likely knew" Plaintiffs had made a mistake and "chose to move forward with their motions to dismiss anyway" (Mot. ¶ 4)—a remarkable charge given Plaintiffs' claim of ignorance of their own "mistake," and one completely at odds with Plaintiffs' admission of fault in their March 4 email (Ex. 1).

Plaintiffs' "mistake" claim is not merely implausible on its face, but also cannot be reconciled with Plaintiffs' own notice of designation, which clearly and unequivocally identified the *Jez* Complaint as operative.  Plaintiffs' notice specifically referenced that complaint by the

Plaintiff that filed it (Adriana Jez), the date on which it was filed (May 13, 2019), and its docket number (D.I. 1).  (D.I. 24.)

Plaintiffs' "mistake" claim is further belied by Plaintiffs' conduct during the span between their designation of the *Jez* Complaint and the filing of Defendants' motions to dismiss. Roughly one week before the deadline for Defendants' motions to dismiss, Plaintiffs' counsel contacted Defendants' counsel regarding a potential stay of proceedings.  (Ex. 3.)  Plaintiffs' counsel was therefore clearly aware of the impending motion to dismiss deadline, yet Plaintiffs apparently claim ignorance of *which* complaint Defendants would be seeking to dismiss.

That Plaintiffs' "mistake" claim is pretextual is further confirmed by Plaintiffs' failure to promptly amend or seek leave to amend their complaint after purportedly discovering their errant designation in early March, a full week after receiving Defendants' motions to dismiss. Plaintiffs initially stated their intention to amend their complaint on March 9, but instead waited until March 27, mere hours before their deadline to respond to Defendants' motions to dismiss, to finally file their Motion—presumably having used that multi-week span to prepare the new proposed amended complaint they claim to have inadvertently neglected to file back on January 27.

In addition to correcting their purported "mistake" in choosing the *Jez* Complaint, Plaintiffs also claim that amendment is required to add "newly discovered information"—namely, parroted allegations set forth in the *Labul* plaintiffs' amended complaint.  (Mot. ¶¶ 13–14.)  This, too, is not credible.  This "information" is hardly new, as the operative complaint in *Labul* was filed on January 3, and therefore was at Plaintiffs' disposal for more than three weeks before Plaintiffs designated the *Jez* Complaint as operative on January 27.  If Plaintiffs wished to lift

allegations from the *Labul* plaintiffs' amended complaint, they had every opportunity to do so— but chose instead to abandon their Amazon-related theory and retreat to the *Jez* Complaint.

Defendants respectfully submit that Plaintiffs' claim of "mistake" is mere pretext with an "ulterior motive" (*cf.* Mot. ¶ 10), and that the far more plausible explanation is that Plaintiffs—in reaction to the dismissal of the *Labul* action, from which Plaintiffs had borrowed their Amazon-related allegations set forth in both the September 2019 Consolidated Complaint and *Rose* Complaint—changed course and attempted to revive their previously abandoned theories by deliberately designating the *Jez* Complaint as their operative pleading.  Once Defendants' motions to dismiss revealed the significant infirmities of the *Jez* Complaint, Plaintiffs now seek to change their basic theory of the case yet again, for the third time.  That gambit should be denied, as Plaintiffs' "allegations cannot remain a moving target forever."  *Kaul* v. *Christie*, 2019 WL 920815, at *17 (D.N.J. Feb. 22, 2019); *see also ABS Indus., Inc.* v. *Fifth Third Bank*, 2008 WL 2185378, at *3 (N.D. Ohio May 23, 2008), *aff'd* 333 F. App'x 994 (6th Cir. 2009) (denying leaving to amend where plaintiff changed tactics merely to survive defendant's pending motion to dismiss).

Plaintiffs' false claim of "mistake" evidences bad faith and provides ample and sufficient grounds to deny Plaintiffs' Motion to Amend.  *See generally Bjorgung* v. *Whitetail Resort,* LP, 550 F.3d 263, 266 (3d Cir. 2008) (confirming this Court's discretion to deny amendment for bad faith).

### B.   Even If Plaintiffs' "Mistake" Claim Is Credited, Plaintiffs Still Fail to Demonstrate Good Cause for Amendment

If this Court credits Plaintiffs' claim that they "mistakenly" designated the *Jez* Complaint as operative, leave to amend still should be denied.  Tellingly, Plaintiffs fail to identify any precedent in which this Court, or any other court, has granted leave to amend in similar

circumstances, and Defendants are aware of none.  That is unsurprising, as Plaintiffs cannot come close to establishing good cause as required by Rule 16.

Plaintiffs offer no reason for having designated the wrong complaint beyond their own inattention and oversight.  Indeed, Plaintiffs do not even attempt to explain how the purported error occurred; nor do they identify what pleading they purportedly intended to file or designate as operative back on January 27.  Plaintiffs also cannot claim to have diligently or promptly identified and corrected their "mistake," as they did not identify it until a full week after Defendants moved to dismiss, and did not file their Motion for weeks thereafter.  None of this suggests reasonable diligence or good cause for amendment.

Plaintiffs cite several cases allowing amendments for good cause where a party learns of new facts unavailable to it before a filing deadline and diligently moves to incorporate this information in an amended pleading.  (Mot. ¶¶ 11 & 13 (citing, *e.g.*, *Cornell Univ.* v. *Illumina, Inc.*, 2016 WL 3046258, at *5 (D. Del. May 27, 2016); *Greygor* v. *Wexford Health Sources*, *Inc.*, 2016 WL 772740, at *4 (W.D. Pa. Feb. 27, 2016) (defendants moved "as soon as practicable" in seeking leave to amend); *Enzo Life Scis., Inc.* v. *Digene Corp.*, 270 F. Supp. 2d 484, 489 (D. Del. 2003)).)  Those cases are inapposite here.  Even an iota of diligence by Plaintiffs or a cursory review of their own notice of designation (before or after its filing) would have alerted Plaintiffs to their "mistake."

Similarly, had Plaintiffs acted with reasonable diligence, they would have used the weeks following the filing of the *Labul* plaintiffs' amended complaint on January 3 to lift any additional allegations for inclusion in an amended complaint here, which was due on January 27. Plaintiffs' characterization of those borrowed allegations as "newly discovered information" (Mot. ¶ 13) is demonstrably false, as the *Labul* plaintiffs' amended complaint was readily ascertainable

to Plaintiffs.  Indeed, Plaintiffs concede as much by claiming they "mistakenly" failed to parrot these *Labul* allegations.  (*Id.* ¶ 12.)

Plaintiffs offer no explanation of their "mistake," nor of their failure to craft and file their proposed complaint or any other amended complaint during the 45-day span afforded by this Court.  Accordingly, Plaintiffs do not come close to demonstrating good cause for amendment.

### C.   Plaintiffs' Motion to Amend Should Be Denied as Unduly Delayed

After this Court afforded Plaintiffs 45 days to file an amended complaint, Plaintiffs instead chose to go backwards, designating the initial *Jez* Complaint as operative rather than designating either of their Amazon-related complaints (the September 2019 Consolidated Complaint or the *Rose* Complaint) as operative or filing an amended complaint.  Plaintiffs do not attempt to explain this failure in their Motion to Amend.  Nor could they.  Again, Plaintiffs' proposed amended complaint does not contain a single allegation unknown to them or unascertainable as of January 27, 2020.  If Plaintiffs wished to assert the new theory of the case or additional allegations set forth in their proposed new pleading, it was incumbent upon them—and entirely within their power—to do so on January 27 in accordance with the Court-ordered schedule.

As the Third Circuit has explained, undue delay warrants denial of leave to amend "when it places an unwarranted burden on the court or when the plaintiff has had previous opportunity to amend."  *Bjorgung*, 550 F.3d at 266.  Here, this Court afforded Plaintiffs ample time to amend—45 days, beginning on December 12, 2019.  Plaintiffs' belated request for another bite at the apple thus constitutes an undue and unexplained delay.  *See id.*  Plaintiffs cannot and do not assert that they have discovered any new information that would warrant amendment.  *See In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 280 (3d Cir. 2004) (affirming denial of motion for leave to amend where plaintiffs "could have included [the allegations] in their original

complaint"). Plaintiffs' unexplained delay in seeking amendment is thus fatal to their Motion to Amend. *See Lorenz*, 1 F.3d at 1414 (finding delay unreasonable where plaintiffs possessed all the relevant facts when filing prior pleadings).

Plaintiffs not only delayed by failing to file their proposed new complaint back in January, but have further delayed by failing to discover their purported "mistake" until a full week after receiving Defendants' motions to dismiss, and then waiting more than three weeks thereafter to file their Motion. This further delay should be construed as an "intentional effort to wait until the last moment" to delay these proceedings, *Del. Display Grp. LLC* v. *Lenovo Grp. Ltd.*, 2016 WL 720977, at *9 (D. Del. Feb. 23, 2016) (Andrews, J.), and provides additional grounds to deny the Motion to Amend.

### D.      Plaintiffs' Motion to Amend Should Be Denied as Unduly Prejudicial

The Third Circuit has made clear that "substantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend." *Cureton* v. *Nat'l Coll. Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Plaintiffs' claim that amendment is "harmless" and will cause "no cognizable prejudice" to Defendants (Mot. ¶ 6 & pp. 4, 6) is demonstrably false. To the contrary, Plaintiffs' Motion to Amend should be denied as unduly prejudicial.

Plaintiffs' proposed amended complaint abandons (yet again) the basic theory of the case set forth in the operative *Jez* Complaint. If amendment is permitted, this would be the ***third*** such radical change in Plaintiffs' theory of the case since they commenced this action less than one year ago. Defendants should not be prejudiced through being forced, without any good cause, to defend themselves against Plaintiffs' "new theories." *Cureton*, 252 F.3d at 273; *see also ING Bank, FSB* v. *Am. Reporting Co., LLC*, 859 F. Supp. 2d 700, 703–04 (D. Del. 2012). Allowing Plaintiffs to once again reverse course "would essentially force the [Defendants] to begin litigating

this case again" as a direct result of Plaintiffs' bad faith and undue delay.  *Cureton*, 252 F.3d at 274.

Remarkably, Plaintiffs argue that they would "suffer hardship" from having to respond to Defendants' motions to dismiss since the *Jez* Complaint should be deemed "moot" (Mot. ¶ 19)—yet completely ignore the corresponding prejudice Defendants would suffer from having prepared and filed the very same motions to dismiss in response to the *Jez* Complaint, as well as the whipsaw of yet another complete reversal in Plaintiffs' theory of the case.

The prejudice to Defendants is a direct result of Plaintiffs' undue delay.  Plaintiffs' unexplained failure to file their proposed amended complaint back on January 27 in accordance with the Court-ordered schedule caused Defendants to be "deprived of the opportunity to present facts or evidence" they would have included in their motions to dismiss "had the amendments been timely."  (Mot. ¶ 15 (citing *Harrison Beverage Co.* v. *Dribeck Imps, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990); *Bechtel* v. *Robinson*, 886 F.2d 644, 652 (3d Cir. 1989))); *see also Brookman* v. *Township of Hillside*, 2018 WL 4350278, at *4 (D.N.J. Sept. 12, 2018) (denying leave to amend where the new claims "are the equivalent of an entirely new action").

Regardless of whether Plaintiffs' belated Motion to Amend is attributable to yet another deliberate abandonment and reversal of their basic theory of the case, on one hand, or an inexplicable mistake and failure of oversight, on the other, Defendants should not be subjected to this significant prejudice.  Accordingly, Plaintiffs' Motion to Amend should be denied.

### E.  Plaintiffs' Motion to Amend Should Be Denied as Futile

If the Court reaches the substance of Plaintiffs' proposed amended complaint (D.I. 38-1), amendment should be denied as futile.  Plaintiffs fail to cure several threshold defects in the *Jez* Complaint—foremost among them, Plaintiffs' failure to either make a demand on the

XPO Board before commencing this action or plead any facts suggesting that the demand requirement is excused.

Plaintiffs' proposed amended complaint, like the *Jez* Complaint, alleges that demand should be deemed excused because Defendant Bradley Jacobs is purportedly XPO's "controlling shareholder" and three other XPO directors are allegedly beholden to him.  (D.I. 38-1 ¶¶ 219, 227.)  As explained in Defendants' motions to dismiss, these allegations are frivolous.  Indeed, Plaintiffs themselves acknowledge (in both the *Jez* Complaint and their new proposed complaint) that Jacobs held ***less than 18%*** of the Company's outstanding shares and was in fact XPO's "***second*** largest stockholder."  (D.I. 30 at 11–12, D.I. 38-1 ¶¶ 36, 39.)  And Plaintiffs' theory that three other XPO directors are somehow beholden to Mr. Jacobs because they allegedly have "ties" to United Rentals makes no sense; among numerous other defects, Mr. Jacobs left United Rentals ***roughly 13 years ago***.  (D.I. 30 at 12–13.)[3]

Additionally, Plaintiffs do not allege facts suggesting that any Defendants face a substantial likelihood of personal liability sufficient to excuse demand.  (D.I. 30 at  13–19.)  Plaintiffs' Amazon-related allegations are all copied and pasted from those previously dismissed— and, Defendants respectfully submit, soon to be dismissed again—in the *Labul* securities action.  Nor do Plaintiffs come close to adequately alleging any breach of fiduciary duty or other claim, let alone alleging facts suggesting a substantial likelihood of liability.   Given the exculpatory provision in XPO's charter adopted pursuant to Section 102(b)(7) of the DGCL, Plaintiffs must allege facts suggesting that XPO's directors acted disloyally or in bad faith.  *See Wood* v. *Baum*, 953 A.2d 136, 141 (Del. 2008).  Like the *Jez* Complaint, nothing in Plaintiffs' proposed new

---

[3]   Plaintiffs' baseless control allegations concerning Mr. Jacobs and three other XPO directors fail in any event because, as Plaintiffs themselves concede, Plaintiffs must demonstrate that at least ***five*** of XPO's nine directors are incapable of considering a demand.  (*See* D.I. 38-1 ¶ 216.)

complaint suggests that any Defendant knowingly disregarded any obligation or otherwise acted

disloyally or in bad faith, whether in regard to the Company's disclosures or otherwise.[4]

  Accordingly, to the extent it reaches the issue, this Court should deny Plaintiffs'

Motion to Amend because their new proposed pleading fails to cure the fundamental defects of

the *Jez* Complaint. *See City of Cambridge Ret. Sys.* v. *Altisource Asset Mgmt. Corp.*, 908 F.3d

872, 878 (3d Cir. 2018); *Jones* v. *Crisis Intervention Servs.*, 239 F. Supp. 3d. 795, 800–01 (D. Del.

2017) (Andrews, J.).

## II.  GIVEN THE FRIVOLITY OF PLAINTIFFS' MOTION TO AMEND, A STAY OF THE CURRENT BRIEFING SCHEDULE IS UNWARRANTED AND WOULD NEEDLESSLY DELAY THESE PROCEEDINGS

  Given the frivolity of Plaintiffs' Motion to Amend, Plaintiffs' Motion to Stay also

should be denied.  Plaintiffs do not come close to identifying any good cause for amendment here,

and a stay of proceedings is therefore unwarranted and would needlessly delay resolution of

Defendants' pending motions to dismiss.

  Courts in the Third Circuit have considered various factors to determine if a stay is

appropriate.  *See Molina Virola* v. *Saul*, 2019 WL 3495997, at *1 n.1 (E.D. Pa. Aug. 1, 2019).

Plaintiffs identify the following three considerations: (i) the prejudice of a stay to the non-movant;

(ii) any hardship or inequity to the movant; and (iii) judicial economy."  (Mot. ¶ 18 (citation

omitted).)

  All three factors cut decidedly against Plaintiffs here.  Defendants will suffer self-

evident prejudice through a needless delay in resolving their motions to dismiss.  Plaintiffs offer

no contrary principle except their say-so that Defendants "are unlikely to suffer any prejudice."

(*Id*. ¶ 19.)  Conversely, Plaintiffs cannot claim prejudice from this Court's refusal of their attempt

---

[4] Plaintiffs' other scattershot demand futility allegations (D.I. 38-1 ¶¶ 215–38) all still fail for the same reasons explained in Defendants' motions to dismiss.

to swap in a wholly different legal theory and brand new complaint in response to Defendants' motions to dismiss.  Nor are Plaintiffs prejudiced by complying with the briefing schedule that this Court ordered more than four months ago.  The lack of any prejudice to Plaintiffs is confirmed by their delay in filing their Motion to Stay, as they waited to do so until mere hours before the deadline for their answering briefs, over three weeks after Plaintiffs first communicated to Defendants their purported "mistake" in designating the *Jez* Complaint.  *See, e.g.*, *S. Freedman & Co. Inc.* v. *Raab*, 2008 WL 4534069, at *3 (D.N.J. Oct. 6, 2008) (denying motion to stay as untimely where party seeking the stay had "ample time, earlier in the proceedings, to raise the issues presented in their motion"); *cf. Ever Win Int'l Corp.* v. *Radioshack Corp.*, 902 F. Supp. 2d 503, 508 (D. Del. 2012) ("[T]he less time that a party waits to file a motion to stay . . . the less that the movant's conduct gives rise to an inference that the delay in so doing was impermissibly tactical.").  Nor would a stay—which would reward Plaintiffs for their extreme and inexplicable inattention, at best, or their bad faith tactics, at worst—in any way serve this Court's interest in efficiency and economy.

Accordingly, Plaintiffs' Motion to Stay should be denied.

## III.   ALTERNATIVELY, IF THE MOTION TO AMEND IS GRANTED, THE COURT SHOULD CONDITION ANY AMENDMENT ON PLAINTIFFS' REIMBURSING DEFENDANTS FOR ALL ATTORNEYS' FEES, EXPENSES AND COSTS INCURRED IN CONNECTION WITH DEFENDANTS' MOTIONS TO DISMISS

For all of the foregoing reasons, the Court should deny Plaintiffs' Motion in full and deem Plaintiffs to have waived any answering brief responsive to Defendants' motions to dismiss through their failure to abide by the governing case schedule.  Conversely, if the Court grants Plaintiffs' Motion to Amend, leave to amend should be conditioned on Plaintiffs making Defendants whole for the needless fees, expenses, and costs incurred in defending themselves against the "inadvertently" filed operative complaint.

"[L]eave to amend is not an all-or-nothing proposition." *Mullin* v. *Balicki*, 875 F.3d 140, 150 (3d Cir. 2017). Indeed, this Court may impose "reasonable conditions on the right to amend in lieu of a pure grant or denial" in order to mitigate the resulting prejudice to opposing parties. *Id.* "The most common condition imposed on an amending party is costs," which "may include costs that were incurred by the opposing party in connection with preparing to meet the portions of the original pleading that have been eliminated from the action by the amendment." Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1486 (3d ed. 2008); *see also, e.g.*, *Gen. Signal Corp.* v. *MCI Telecomms. Corp.*, 66 F.3d 1500, 1514 (9th Cir. 1995) ("[A] district court, in its discretion, may impose costs pursuant to Rule 15 as a condition of granting leave to amend in order to compensate the opposing party for additional costs incurred because the original pleading was faulty."); *Hayden* v. *Feldman*, 159 F.R.D. 452, 455 (S.D.N.Y. 1995) (finding that defendant "would not have been put to the expense of moving to dismiss the faulty Third Amended Complaint had plaintiffs filed a proper complaint at the outset" and that "[a]n award of attorney's fees and costs incurred in preparing that motion to dismiss, therefore, is reasonable compensation for that prejudice.").

While Courts consider the same factors in deciding a motion for leave to amend in determining whether to impose such conditions—including prejudice attributable to undue delay or bad faith—courts in this Circuit have freely awarded costs and fees in circumstances involving relatively modest prejudice, even absent evidence of undue delay or bad faith. *See, e.g.*, *Leased Optical Departments-Montgomery Ward, Inc.* v. *Opti-Center, Inc.*, 120 F.R.D. 476, 480–82 (D.N.J. 1988) (granting leave to amend but requiring plaintiff to pay a portion of the expenses incurred by the defendant in conducting discovery on the added claims).

Here, if amendment is permitted, there can be no dispute that Defendants' efforts expended and fees, expenses, and costs incurred in connection with their pending motions to dismiss were entirely needless and avoidable. Moreover, Plaintiffs do not—and cannot—dispute that these expenditures are a direct result of Plaintiffs' failure to comply with the Court's order to designate or file an operative complaint. Accordingly, if the Motion to Amend is granted, this Court should exercise its discretion and mitigate prejudice to Defendants by requiring Plaintiffs to reimburse all such fees, costs, and expenses as a condition to any grant of leave to amend.[5]

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion in full or, in the alternative, if the Motion to Amend is granted, condition any such amendment upon Plaintiffs first reimbursing all attorneys' fees, costs, or expenses incurred by Defendants in connection with their motions to dismiss the "inadvertently" designated *Jez* Complaint.

---

[5] Given the degree of undue delay and prejudice caused by Plaintiffs' actions, and the indicia of bad faith, the Court may also award costs and fees pursuant to either 28 U.S.C. § 1927 or its inherent authority to govern the conduct before it. *See LaSalle Nat. Bank* v. *First Conn. Holding Grp., LLC.*, 287 F.3d 279, 288 (3d Cir. 2002) (holding that sanctions against a party under 28 U.S.C. § 1927 are appropriate where the party "(1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct"); *see also Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (holding that a court may award attorneys' fees under its inherent power to police itself when a party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons").

OF COUNSEL:

Martin Flumenbaum (admitted *pro hac vice*)
Julia T. M. Wood (admitted *pro hac vice*)
Ameya S. Ananth (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000
Fax: (212) 757-3990
mflumenbaum@paulweiss.com
jwood@paulweiss.com
aananth@paulweiss.com


Dated:  April 13, 2020

PAUL, WEISS, RIFKIND, WHARTON
     & GARRISON LLP

By: */s/ Daniel A. Mason*
Daniel A. Mason (#5206)
500 Delaware Avenue, Suite 200
Post Office Box 32
Wilmington, DE 19899-0032
Tel.: (302) 655-4410
Fax: (302) 655-4420
dmason@paulweiss.com

*Attorneys for Defendants Bradley S.*
*Jacobs, Gena L. Ashe, Michael G.*
*Jesselson, Adrian P. Kingshott, Jason D.*
*Papastavrou, and Oren G. Shaffer, and*
*Nominal Defendant XPO Logistics, Inc.*